IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ELIAS N. COSTIANES,<br><br>Defendant. | CASE NO. 21-CR-180 (RJL) |

### UNITED STATES' TRIAL BRIEF

The United States, by and through its attorney, respectfully submits this trial brief in advance of the February 12, 2024 bench trial. The brief highlights pending issues before the Court, sets out the elements of the offenses, and summarizes the Government's evidence at trial. While the Government has been unable to obtain agreement on any stipulations, it will continue to work with Defendant on stipulations to shorten the trial.

**I.  PENDING ISSUES**

   **A.  Government's Motions in Limine**

On January 10, 2024, the government filed an Omnibus Motion in Limine to preclude Defendant from introducing improper defense arguments and irrelevant evidence. ECF 81. Specifically, the Government moved to preclude Defendant from: 1) arguing the Government engaged in selective prosecution related to members of the media; 2) arguing his conduct was permitted by the First Amendment; 3) eliciting or introducing the specific location of security cameras in the U.S. Capitol; 4) eliciting or introducing specific U.S. Secret Service tactics and emergency operations; 5) arguing his conduct was authorized by the former President or government officials; 6) arguing his conduct was permitted due to law enforcement inaction; and 7) arguing his prior good acts, or relative culpability to other January 6 defendants and suspects, negate the criminality of his conduct.

  **B.**  **Defendant's Motion to Continue the Trial**

On January 8, 2024, Defendant filed a Motion to Continue Trial. ECF 79. The government submitted a response on January 10, 2024. ECF 80. In his motion, Defendant raised the U.S. Supreme Court's grant of certiorari of *United States v. Fischer* -- which will address the scope of 18 U.S.C. Section 1512 -- as the primary reason for his continuance request. *Id.* at 1. Defendant argues that continuing trial, pending a decision from the Supreme Court in *Fischer*, is appropriate because its outcome will shape defense strategy, alter the presentation of the Government's evidence, and save judicial resources in presiding over a charge that may be reinterpreted by the Court. *Id.* at 2.

The Government respectfully opposes a trial continuance, or a stay of the proceedings, because Defendant still faces legally valid charges. In *Fischer,* the D.C. Circuit found congressional certification of the electoral college to be an "official proceeding" for purposes of the Section 1512(c)(2) criminal charge. *United States v. Fischer*, 64 F.4th 329, 342 (D.C. Cir. 2023). Thus, no continuance is needed because the indictment charges Defendant with legally valid charges. Even if the Supreme Court overturns *Fisher,* there will be no impact on the presentation of evidence because the Government will use the same evidence and witnesses in proving Counts Two through Six. The Government and the public also have a strong interest in the timely adjudication of this case, which has been pending for almost three years.

**II.**  **ELEMENTS OF THE OFFENSES**

On March 3, 2021, a Grand Jury indicted Defendant on six counts. Count One charged Obstruction of Congress, and Aiding and Abetting, in violation of Title 18, United States Code, Section 1512(c)(2) and 2. Count Two charged Entering and Remaining in a Restricted Building and Grounds, in violation of Title 18, United States Code, Section 1752(a)(1). Count Three

charged Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of Title 18, United States Code, Section 1752(a)(2). Count Four charged Entering and Remaining in the Gallery of Congress, in violation of Title 40, United States Code, Section 5104(e)(2)(B). Count Five charged Disorderly Conduct in a Capitol Building, in violation of Title 40, United States Code, Section 5104(e)(2)(D). And Count Six charged Parading, Demonstrating, or Picketing a Capitol Building, in violation of Title 40, United States Code, Section 5104(e)(2)(G). The Government submits the following offense elements for the Court's consideration:

### Count One, Elements for Obstruction of an Official Proceeding (18 U.S.C. § § 1512(c)(2) and 2)

First, the defendant attempted to or did obstruct or impede an official proceeding.

Second, the defendant intended to obstruct or impede the official proceeding.

Third, the defendant acted knowingly, with awareness that the natural and probable effect of his conduct would be to obstruct or impede the official proceeding.

Fourth, the defendant acted corruptly.

**Definitions**

To "obstruct" or "impede" means to block, interfere with, or slow the progress of an official proceeding.

Congress's Joint Session to certify the Electoral College vote on January 6, 2021, was an "official proceeding" as that term is used in this count.[1] The official proceeding need not be pending or about to be instituted at the time of the offense. If the official proceeding was not pending or about to be instituted, the government must prove beyond a reasonable doubt that the

---

[1] *United States v. Fischer*, 64 F.4th 329, 342 (D.C. Cir. 2023) (holding "that congressional certification of the Electoral College count is an 'official proceeding'" for purposes of § 1512(c)(2)). *See also* 18 U.S.C. § 1515(a)(1)(B) (defining "official proceeding" to include "a proceeding before the Congress").

3

official proceeding was reasonably foreseeable to the defendant.[2]

A person acts "knowingly" if he realizes what he is doing and is aware of the nature of his conduct, and does not act through ignorance, mistake, or accident. In deciding whether the defendant acted knowingly, you may consider all of the evidence, including what the defendant did, said, or perceived.[3]

To act "corruptly," the defendant must use independently unlawful means or act with an unlawful purpose, or both.[4] The defendant must also act with "consciousness of wrongdoing." "Consciousness of wrongdoing" means with an understanding or awareness that what the person

---

[2] 18 U.S.C. § 1512(f)(1) ("For the purposes of this section—(1) an official proceeding need not be pending or about to be instituted at the time of the offense"). For the nexus requirement (that the official proceeding need be reasonably foreseeable), see *United States v. Sandlin*, 575 F. Supp. 3d 16, 32 (D.D.C. 2021); *United States v. Aguilar*, 515 U.S. 593, 599-600 (1995). For other January 6 trials that have used a similar instruction, see, *e.g.*, *United States v. Reffitt*, 21-cr-32 (DLF) (ECF No. 119 at 25-26), *United States v. Robertson*, 21-cr-34 (CRC) (ECF No. 86 at 12), *affirmed at* __ F.4th __, 2023 WL 6932346 (D.C. Cir. 2023), *United States v. Thompson*, 21-cr-161 (RBW) (ECF No. 832 at 26), *United States v. Williams*, 21-cr-377 (BAH) (ECF No. 112 at 7); and *United States v. Thomas*, 21-cr-552 (DLF) (ECF No. 150 at 23).

[3] *See* The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit §§ 1512 & 1515(a)(1); *see also Arthur Andersen LLP v. United States*, 544 U.S. 696, 705 (2005); *United States v. Carpenter*, 21-cr-305 (JEB) (ECF No. 97 at 11) (including instruction that the evidence to be considered includes "what [the defendant] did, said, or perceived"); *United States v. Kelly*, 21-cr-708 (RCL) (ECF No. 101 at 9) (same); *United States v. Fellows*, 21-cr-83 (TNM) (ECF No. 140 at 26) (same); *United States v. Gunby*, 21-cr-626 (PLF) (ECF No. 57 at 7 (holding, in a January 6 case charging offenses under 18 U.S.C. § 1752 and 40 U.S.C. § 5104, that "what [the defendant] witnessed is directly relevant to his knowledge and intent") (citing *United States v. Griffith*, 21-cr-244, 2023 WL 2043223, at *3 (D.D.C. Feb. 16, 2023) and *United States v. Rhine*, 21-cr-687, 2023 WL 2072450, at *7 (D.D.C. Feb. 17, 2023)).

[4] In *United States v. Robertson*, __ F.4th __, 2023 WL 6932346 (D.C. Cir. 2023), the district court adopted a jury instruction that largely mirrored this proposed definition of "corruptly." *Id.* at *3. On appeal, the D.C. Circuit stated: "[T]he district court correctly informed the jury that it could find that Robertson acted 'corruptly' if the government proved that he 'use[d] [independently] unlawful means' when he obstructed, impeded, or influenced the Electoral College vote certification. . . . Defining 'corruptly' as 'wrongfully' — and treating independently unlawful conduct as 'wrongful' — provides an objective measure of culpable conduct that is straightforward to apply: A court or a jury can easily determine whether the evidence shows that a defendant took unlawful action to obstruct, impede, or influence the proceeding." *Id.* at *9.

is doing is wrong or unlawful.

Not all attempts to obstruct or impede an official proceeding involve acting corruptly. For example, a witness in a court proceeding may refuse to testify by invoking his or her constitutional privilege against self-incrimination, thereby obstructing or impeding the proceeding, but that person does not act corruptly. In contrast, an individual who obstructs or impedes a court proceeding by bribing a witness to refuse to testify in that proceeding, or by engaging in other independently unlawful conduct, does act corruptly.[5] One way of acting corruptly involves acting with the intent to secure an unlawful advantage or benefit either for oneself or for another person.[6]

While the defendant must act with intent to obstruct the official proceeding, this need not

---

[5] The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit; *Arthur Andersen LLP v. United States*, 544 U.S. 696, 706 (2005); *United States v. Fischer*, 64 F.4th 329, 340 (D.C. Cir. 2023) (opinion of Pan, J.); *United States v. Gordon*, 710 F.3d 1124, 1151 (10th Cir. 2013); *United States v. Friske*, 640 F.3d 1288, 1291 (11th Cir. 2011); *United States v. Watters*, 717 F.3d 733, 735 (9th Cir. 2013); *United States v. North*, 910 F.2d 843, 883 (D.C. Cir. 1990), *withdrawn and superseded in part by United States v. North*, 920 F.2d 940 (D.C. Cir. 1990); *United States v. Sandlin*, 575 F. Supp. 3d 16, 32 (D.D.C. 2021); *United States v. Caldwell*, 581 F. Supp. 3d 1, 19-20 (D.D.C. 2021); *United States v. Mostofsky*, 579 F. Supp. 3d 9, 26 (D.D.C. 2021); *United States v. Montgomery*, 578 F. Supp. 3d 54, 82 (D.D.C. 2021); *United States v. Lonich*, 23 F.4th 881, 902-03 (9th Cir. 2022). For other January 6 trials that have used similar instructions, see, *e.g.*, *United States v. Williams*, 21-cr-377 (BAH) (ECF No. 112 at 7), *United States v. Reffitt*, 21-cr-32 (DLF) (ECF No. 119 at 25-29), and *United States v. Kelly*, 21-cr-708 (RCL) (ECF No. 101 at 10).

[6] "[T]here are many ways to prove 'corruptly[,]'" *United States v. Robertson*, __ F.4th __, 2023 WL 6932346, at *11, n.8 (D.C. Cir. Oct. 20, 2023); this is merely one way. *See id.* at *12 ("Acting 'dishonestly' would be consistent with the ordinary meaning of acting 'corruptly.' . . . Likewise, a defendant's obstructive conduct may often seek to secure an unlawful benefit for himself or another, such as preventing negative testimony at a trial."). This formulation, which *Robertson* found was not required but which incorporates aspects of the lead and concurring opinions in *United States v. Fischer*, 64 F.4th 329, 340 (D.C. Cir. 2023) (opinion of Pan, J.); *id.* at 352 (Walker, J., concurring), was provided in *United States v. Nordean, et al*, 21-cr-175 (TJK) (ECF No. 767 at 31-32), *United States v. Kelly*, 21-cr-708 (RCL) (ECF No. 101 at 10), *United States v. Thomas*, 21-cr-552 (DLF) (ECF No. 150 at 24), *United States v. Fellows*, 21-cr-83 (TNM) (ECF No. 140 at 27), and *United States v. Alam*, 21-cr-190 (DLF) (ECF No. 104 at 28).

be his sole purpose. A defendant's unlawful intent to obstruct an official proceeding is not negated by the simultaneous presence of another purpose for his conduct.[7]

The government further alleges that the defendant committed obstruction of an official proceeding, as charged in Count One, by aiding and abetting others in committing this offense.

<u>Elements of Aiding and Abetting Obstruction of an Official Proceeding</u>

First, that others committed Obstruction of an Official Proceeding by committing each of the elements of the offense charged, as laid out above.

Second, that the defendant knew that Obstruction of an Official Proceeding was going to be committed or was being committed by others.

Third, that the defendant performed an act or acts in furtherance of the offense.

Fourth, that the defendant knowingly performed that act or acts for the purpose of aiding, assisting, soliciting, facilitating, or encouraging others in committing the offense of Obstruction of an Official Proceeding.

Fifth, that the defendant did that act or acts with the intent that others commit the offense of Obstruction of an Official Proceeding.

### Count Two, Elements of Entering and Remaining in a Restricted Building or Grounds (18 U.S.C. § 1752(a)(1))

First, the defendant entered or remained in a restricted building or grounds without lawful authority to do so.

Second, the defendant did so knowingly.

---

[7] *United States v. Carpenter*, 21-cr-305 (JEB) (ECF No. 97 at 11); *United States v. Kelly*, 21-cr-708 (RCL) (ECF No. 101 at 10); *United States v. Fellows*, 21-cr-83 (TNM) (ECF No. 140 at 27); *United States v. Alam*, 21-cr-190 (DLF) (ECF No. 104 at 29).

**Definitions**

The term "restricted building or grounds" means any posted, cordoned off, or otherwise restricted area of a building or grounds where a person protected by the Secret Service is or will be temporarily visiting.

The term "person protected by the Secret Service" includes the Vice President and the immediate family of the Vice President.

The term "knowingly" has the same meaning described in Count One.

### Count Three, Elements for Disorderly and Disruptive Conduct in a Restricted Building or Grounds (18 U.S.C. § 1752(a)(2))

First, the defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds.

Second, the defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions.

Third, the defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.

**Definitions**

"Disorderly conduct" is conduct that tends to disturb the public peace or undermine public safety.[8] Disorderly conduct includes when a person acts in such a manner as to cause another person to be in reasonable fear that a person or property in a person's immediate

---

[8] *United States v. Grider*, 21-cr-22 (CKK) (ECF No. 150 at 24) ("'[D]isorderly' conduct is that which 'tends to disturb the public peace, offend public morals, or undermine public safety.' 'Disorderly,' *Black's Law Dictionary* (9th ed. 2009); *see also* 'Disorderly,' *Oxford English Dictionary* (2nd ed. 1989) ('Not according to order or rule; in a lawless or unruly way; tumultuously, riotously.')").

possession is likely to be harmed or taken, uses words likely to produce violence on the part of others, or is unreasonably loud and disruptive under the circumstances.[9]

"Disruptive conduct" is a disturbance that interrupts an event, activity, or the normal course of a process.[10]

The term "restricted building or grounds" has the same meaning described in Count Two. The term "knowingly" has the same meaning described in Count One.

### Count Four, Elements for Entering and Remaining in the Gallery of Congress (40 U.S.C. § 5104(e)(2)(B))

First, the defendant entered or remained in the Gallery of either House of Congress without lawful authority to do so.

Second, the defendant acted willfully and knowingly.

**Definitions**

The term "House of Congress" means the United States Senate or the United States House of Representatives.

A person acts "willfully" if he acts with the intent to do something that the law forbids, that is, to disobey or disregard the law. "Willfully" does not, however, require proof that the defendant be aware of the specific law or rule that his conduct may be violating.[11]

The term "knowingly" has the same meaning described in Count One.

---

[9] *United States v. Schwartz, et al,*, 21-cr-178 (APM) (ECF No. 172 at 27); *United States v. Gietzen*, 22-cr-116 (CJN) (ECF No. 50 at 32); *United States v. Alam*, 21-cr-190 (DLF) (ECF No. 104 at 237-38).
[10] Redbook 6.643.
[11] *See United States v. Bryan*, 524 U.S. 184, 190 (1998).

### Count Five, Elements for Disorderly Conduct in a Capitol Building
### (40 U.S.C. § 5104(e)(2)(D))

First, the defendant engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings.

Second, the defendant did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress.

Third, the defendant acted willfully and knowingly.

**Definitions**

The term "Capitol Buildings" includes the United States Capitol located at First Street, Southeast, in Washington, D.C.

The term "House of Congress" has the same meaning described in Count Four.

The terms "Disorderly conduct" and "disruptive conduct" have the same meaning described in Count Three. For purposes of this offense, "the orderly conduct of a session of Congress or either House of Congress" includes the actions of Congress' Joint Session to certify the Electoral College vote.[12]

The term "knowingly" has the same meaning described in Count One.

The term "willfully" has the same meaning described in Count Four.

### Count Six, Elements for Parading, Demonstrating, or Picketing in a Capitol Building
### (40 U.S.C. § 5104(e)(2)(G))

First, the defendant paraded, demonstrated, or picketed in any of the United States Capitol Buildings.

Second, the defendant acted willfully and knowingly.

---

[12] *See United States v. Kelly*, 21-cr-708 (RCL) (ECF No. 101 at 17).

**Definitions**

The terms "parade" and "picket" have their ordinary meanings. The term "demonstrate" refers to conduct that would disrupt the orderly business of Congress by, for example, impeding or obstructing passageways, hearings, or meetings, but does not include activities such as quiet praying.[13]

The term "Capitol Buildings" has the same meaning described in Count Five.

The term "knowingly" has the same meaning described in Count One.

The term "willfully" has the same meaning described in Count Four.

### III. THE GOVERNMENT'S PROOF

**Witnesses**

At present, the Government intends to call the following witnesses at trial. *Attachment 1*, Government Witness List. If the parties are able to reach stipulations on certain topics, this may obviate the need for a particular witness's testimony.

#### A. Captain Neysha Mendoza from U.S. Capitol Police

The Government intends to call Captain Mendoza. Captain Mendoza will testify about the security measures put in place on January 6 to include a restricted perimeter, how the riot unfolded during the day, efforts of law enforcement to secure the Capitol, and how government business was disrupted. Further, Captain Mendoza is familiar with Capitol Police security cameras at the

---

[13] *United States v. Barnett*, 21-cr-38 (CRC) (ECF No. 158 at 23); *United States v. Alam*, 21-cr-190 (DLF) (ECF No. 104 at 44). *See also Bynum v. United States Capitol Police Board*, 93 F. Supp. 2d 50, 58 (D.D.C. 2000).

U.S. Capitol building and grounds and Capitol Police radio communications. Captain Mendoza may be asked to authenticate security videos and police radio recordings.

### B.    Inspector Lanelle Hawa from the U.S. Secret Service

The Government intends to call Ms. Lanelle Hawa from the U.S. Secret Service. Ms. Hawa will be expected to testify about Secret Service's protection of Vice President Mike Pence, the evacuation of the Vice President, and Secret Service's coordination with other law enforcement agencies. Ms. Hawa may also be asked to authenticate secret service radio recordings.

### C.    FBI Special Agent Sean O'Rourke

The Government intends to call Sean O'Rourke, the FBI case agent assigned to this matter. Agent O'Rourke has reviewed surveillance video maintained by the U.S. Capitol Police, videos taken by Defendant, and text communications located in Defendant's phone. Agent O'Rourke is expected to testify about his review of Defendant's text communications and videos, the search of Defendant's residence, and Defendant's movements within the U.S. Capitol building. Agent O'Rourke has met Defendant multiple times, heard Defendant's voice in-person, and heard Defendant's voice on videos and recordings made by Defendant. Agent O'Rourke may identify Defendant and his voice at trial. Agent O'Rourke may testify about statements made by Defendant during an interview. The government may also introduce certified videos of the congressional certification process through Agent O'Rourke.

The Government respectfully requests that Agent O'Rourke be permitted to sit at counsel's table throughout trial pursuant to Federal Rule of Evidence 615.

### D.    FBI Special Agent Alexandria M. Thoman O'Donnell

The Government may call Agent Thoman O'Donnell. On February 12, 2021, Agent Thoman O'Donnell participated in the search of Defendant's residence in Baltimore, MD. While

11

there, Agent Thoman O'Donnell located and seized Defendant's Apple iPhone 11 Pro-Max on a tv-stand in the living room. Agent Thoman O'Donnell also extracted data from the phone through the Cellebrite program. Relevant text communications were later retrieved by Agent O'Rourke from the extracted data.

If the Parties cannot agree on a stipulation on the seizure and extraction of the phone, then Agent Thoman O'Donnell will testify about locating and seizing Defendant's phone and her extraction of data.

### E. FBI Special Agent Matt Hamel

The government may call Agent Hamel. On February 12, 2021 Agent Hamel, along with FBI Agent Ken Chaffee, transported Defendant to the FBI Washington Field office for arrest processing. During the transport, Agent Hamel participated in a conversation between Defendant and FBI Agent Ken Chapee. During the conversation, Defendant discussed some of his activities in the U.S. Capitol Building.

Agent Hamel may be called in the government's case-in-chief, or as a rebuttal witness if Defendant testifies inconsistently with his statements during the transport to the FBI office.

### F. Michael Mastrian, Director of the Senate Radio and TV Gallery

The government may call Mr. Mastrian, who is the Director of the Senate Radio and TV Gallery. Mr. Mastrian may be called to testify that Defendant has never been credentialed as a member of the press.

### Physical Evidence

The Government expects to introduce the following categories of evidence: evidence of the U.S. Capitol Building and restricted perimeter (Exhibits 101-110); closed circuit security footage -- or still photos -- of Defendant in the U.S. Capitol Building (Exhibits 201-211); an

Apple Business Record Certification for Defendant's iCloud (Exhibit 301); video recordings made by Defendant on January 6, 2021 in and around the U.S. Capitol Building, and seized from his Apple iCloud (Exhibits 302-323); Defendant's text communications from his Apple iPhone (Exhibits 401-410); Search Warrant Photos (3) and Defendant's seized iPhone Pro Max (Exhibits 501-504); evidence of the official proceeding of Congress -- which may include a video montage -- and non-existence of press records for Defendant (Exhibits 601-609); documents and video concerning the Secret Service's protection and relocation of the Vice President (Exhibits 701-705); and stipulations (if any) (Exhibit 801). *See* Attachment 2, Government Exhibit List.

    As ordered by the Court, the Government's exhibit list reflects the run times of each video that may be introduced. Based on what the Government expects to admit and publish at trial, the total run time of the videos would be less than 50 minutes.

///

///

///

## IV.     CONCLUSION

The Government will be available to discuss any of the pending motions before the Court, government exhibit or witnesses, or any other issues at the final pre-trial conference on February 17, 2024.

Dated: January 10, 2024

        Respectfully submitted,

        MATTHEW M. GRAVES
        United States Attorney
        D.C. Bar No. 481052

        */s/ Raymond K. Woo*
        Raymond K. Woo
        Assistant United States Attorney
        Detailee
        AZ Bar No. 023050
        601 D St., NW
        Washington, D.C. 20001
        Raymond.woo@usdoj.gov
        602-514-7736

        */s/ Melanie Krebs-Pilotti*
        Melanie Krebs-Pilotti
        Trial Attorney- Antitrust Division
        Detailee
        Cal Bar. No. 241484
        601 D St., NW
        Washington, D.C. 20001
        melanie.krebs-pilotti2@usdoj.gov
        (202) 870-7457